IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–01134–RM–KMT

HAZHAR A. SAYED,

    Plaintiff,

v.

LT. NORVA COURTNEY, individual capacity,
UNKNOWN JOHN/JANE DOES, individual capacity,

    Defendants.

---

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendant Norva Courtney's Motion for Summary Judgment (Doc. No. 79, filed Dec. 2, 2013) and Plaintiff's "Combined Motion for Permission to File Surreply and Surreply" (Doc. No. 90, filed Feb. 5, 2014). For the following reasons, Plaintiff's Motion for Permission to File Surreply is GRANTED and the court RECOMMENDS that Defendants' Motion for Summary Judgment be DENIED.

**PROCEDURAL HISTORY**

    Plaintiff is an inmate with the Colorado Department of Corrections (CDOC) and was incarcerated at Fremont Correctional Facility (FCF) at the time of the events at issue in this case.[1] In his Prisoner Complaint (Doc No. 1, filed Apr. 30, 2013), Plaintiff originally asserted

---

[1] Plaintiff is currently incarcerated at Sterling Correctional Facility.

two claims for relief pursuant to 42 U.S.C. § 1983:  (1) an Eighth Amendment claim for deliberate indifference to his serious medical needs; and (2) a First Amendment retaliation claim against Defendant Courtney only.

On August 10, 2012, Defendants filed a Motion to Dismiss arguing that both of Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  (*See* Doc. No. 16.)  On February 5, 2013, this court recommended that Defendants' Motion to Dismiss be granted to the extent it sought to dismiss Plaintiff's Eighth Amendment claim, but denied to the extent that it sought to dismiss his retaliation claim.  (Doc. No. 32 [Feb. 5, 2013 Recommendation].)  On February 26, 2013, District Judge Christine M. Arguello adopted this court's Recommendation.  (*See* Order, Doc. No. 39.)  Accordingly, only Plaintiff's retaliation claim against Defendant Courtney remains pending.

Defendant's Motion for Summary Judgment was filed on December 2, 2013.  (*See* Mot. Summ. J.)  "Plaintiff's Response to Defendants' Motion for Summary Judgment was filed on December 16, 2013.  (Doc. No. 84 [Resp.].)  Defendants' Reply in Support of the Motion for Summary Judgment was filed on January 29, 2014.  (Doc. No. 89 [Reply].)  Accordingly this matter is ripe for the court's review and recommendation.

Plaintiff's Motion for Permission to File Surreply was filed on February 5, 2014.  (*See* Mot. File Surreply.)  Pursuant to D.C.COLO.LCivR 7.1(d) and Fed.R. Civ. P. 6(d), Defendants

had until March 1, 2014 to file a response.  No response was filed on or before that date.

Accordingly, these motions are ripe for the courts review and recommendation.

## FACTUAL BACKGROUND

Plaintiff alleges that, on March 29, 2011, while he was lifting a fifty-pound box as part of his job duties, his lower back "gave out." (Compl. at 4.)  Plaintiff received treatment for this injury over the course of several months. (*See id.*)

On October 14, 2011, Plaintiff was attending an Islamic prayer service when he began suffering "extreme back pain." (Resp. at 6, Affidavit of Hazhar A. Sayed ¶ 1 [Sayed Aff.]). Plaintiff sought to leave the religious service and initially approached the correctional officer in charge.[2] (*Id.*)  Plaintiff maintains that he told the correctional officer that he was in extreme pain and needed to return to his cell house so that the Medical Department could be called before Plaintiff had to report to work. (*Id.*)  The correctional officer allegedly refused. (*Id.*)

Plaintiff then approached Defendant Courtney in her office. (*Id.* ¶ 2; Mot. Summ. J., Ex. A, Affidavit of Narva Courtney ¶ 5 [Courtney Aff.].)  From this point forward, the facts are largely in dispute.

Plaintiff, on the one hand, maintains that he explained to Defendant Courtney that he was in "extreme distress" and needed to return to the cell house so that the Medical Department could be called. (Sayed Aff. ¶ 2.)  Plaintiff asserts that Defendant Courtney returned with him to the multipurpose room where the religious service was being held and spoke with the correctional

---

[2] It appears likely that this correctional officer is Security Officer James Baldwin, discussed *infra.*

3

officer. (Sayed Aff. ¶ 2.) According to Plaintiff, Defendant Courtney told him that she was informed by the correctional officer that Plaintiff had requested to return to the cell block not because of any back pain, but instead because he simply needed to get ready for work. (*Id.* ¶ 2.) Plaintiff also maintains that that Defendant Courtney told him that she was not going to do him any favors as he had previously filed grievances against her. (*Id.*) Plaintiff asserts, in fact, that Defendant Courtney indeed took no action to address his back pain, despite the fact that he was in "extreme distress" and had requested medical attention. (*Id.*)

Defendant Courtney, on the other hand, maintains that Plaintiff requested that she "do him a favor" and give him a pass so that he could go back to the cell house. (Courtney Aff. ¶ 6.) Defendant Courtney asked why Plaintiff needed a pass when the religious service would be over in 25 minutes. (*Id.* ¶ 7.) Defendant Courtney admits that Plaintiff claimed that his back was hurting and he wanted to go back to the cell house; however, she maintains Plaintiff did not mention that he wanted or needed to go to the Medical Department or that he wished to declare a medical emergency. (*Id.* ¶¶ 8-9.)

After speaking with Plaintiff in her office, Defendant Courtney maintains she agreed to personally escort Plaintiff back to the cell house. (Courtney Aff. ¶ 11.) As she escorted Plaintiff, however, she came upon Security Officer James Baldwin. (*Id.*) Officer Baldwin purportedly told Defendant Courtney that Plaintiff had given him two different stories as to why he needed to leave the religious service early. (*Id.*) More specifically, Defendant Courtney asserts Plaintiff initially told Officer Baldwin that he needed to go back to the cell house early in

order to get ready for work. (*Id.* ¶ 12.) However, five minutes later, Plaintiff apparently returned to Officer Baldwin and said he needed to go to medical because of his back pain. (*Id.*)

Defendant Courtney asserts that, under CDOC policy,[3] offenders are not allowed to leave programs, including religious services, unless the offender has a legitimate reason for leaving early or has declared a medical emergency. (*Id.* ¶ 14.) As discussed, Defendant Courtney maintains that Plaintiff did not declare a medical emergency. Further, because Plaintiff allegedly gave Officer Baldwin two different reasons for wanting to leave the service early, Defendant Courtney determined that Plaintiff had not expressed a truthful, legitimate reason for leaving the religious service early. (*Id.*) As such, Defendant Courtney declined to escort Plaintiff back to the cell house and instructed Plaintiff to return to the multipurpose room until the religious service concluded. (*Id.* ¶¶ 14-15.)

Defendant Courtney contends that she never stated she would not do anything for Plaintiff because he had filed grievances against her. (*Id.* ¶ 17.)

## LEGAL STANDARD

*A.     Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the

---

[3] Defendant Courtney actually refers to "our policies." (*Id.* ¶ 14.) The court assumes this refers to the CDOC's policies.

moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### *B.     Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff first must establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the

right was clearly established." *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

## ANALYSIS

### A. *Motion for Permission to File Surreply*

The court first addresses Plaintiff's Motion for Permission to File Surreply. Plaintiff seeks to file a Surreply alleging that Defendant Courtney raised new issues for the first time in her Reply. More specifically, Plaintiff seeks to rebut Defendant Courtney's contentions in her Reply (1) that the statements of Officer Baldwin included in her affidavit are not hearsay because they are not submitted for the truth of the matter asserted, and (2) that the court should not

consider inmate Darren Chandler's affidavit because he was not present at the religious services on October 14, 2011. Because Defendant Courtney has not responded to Plaintiff's Motion for Permission to File a Surreply, the court assumes the motion is unopposed.

For reasons discussed in footnotes 4 and 5 *infra*, the arguments included in Plaintiff's Surreply are largely immaterial to the court's resolution of Defendant's Motion for Summary Judgment. Nevertheless, the court agrees that these issues Plaintiff seeks to rebut were raised for the first time in Defendant Courtney's Reply. The court also finds that Defendant Courtney will not suffer any prejudice if Plaintiff's Surreply is considered. Accordingly, Plaintiff's Motion for Permission to File a Surreply is granted.

### B.    *Motion for Summary Judgment*

Defendant Courtney argues that she is entitled to qualified immunity and therefore summary judgment from Plaintiff's retaliation claim. The court disagrees.

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 2000) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)) (internal quotation marks omitted); *Poole v. Cnty. of Otero,* 271 F.3d 955, 960 (10th Cir. 2001) *overruled on other grounds by Hartman v. Moore,* 547 U.S. 250 (2006) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). "In particular, officials may not retaliate against prisoners for filing administrative grievances." *Allen v. Corrs. Corp. of Am.,* 524 F. App'x 460, 463 (10th Cir. 2013) (citing *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991)). However,

"an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson,* 149 F.3d at 1144.

To prevail on a claim for First Amendment retaliation, a plaintiff must satisfy three elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Allen v. Avance,* 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007)).

Defendant Courtney does not dispute that Plaintiff was engaged in protective activity. Indeed, Defendant Courtney admits that Plaintiff filed a grievance that mentioned her on January 28, 2010.  (Courtney Aff. ¶ 17.)

Defendant Courtney also does not dispute that her actions would be sufficient to chill a reasonable person from engaging in protected activity.  Indeed, in this court's February 4, 2013 Recommendation, the court found that denying Plaintiff an opportunity to seek medical attention for back pain that prevented him from sitting or standing, even if only for 25 minutes before the religious service concluded, would be sufficient to chill a reasonable person from exercising his constitutional rights in the future.  (*See* Feb. 5, 2013 Recommendation at 13-15.)  Here, Plaintiff has submitted evidence suggesting that he was suffering "extreme back pain" severe enough to prevent him from sitting or standing.  (Sayed Aff. ¶ 1; Resp. at 9, Affidavit of Shawn Rivera ¶ 3

10

[Rivera Aff.].)

Defendant Courtney argues, as to the third element, that Plaintiff cannot establish that her actions were motivated as a response to Plaintiff's prior grievance. "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (emphasis in original; internal quotation marks and citation omitted). A prisoner may not rely on a general attack upon a defendant's motivation, but must produce "affirmative evidence" of a retaliation. *See Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). Altogether, to survive summary judgment, a plaintiff must demonstrate "not only that a retaliatory motive may have played some role in [the challenged conduct] but that such motive was the strict but-for cause of the conduct." *Strope v. Cummings,* 381 F App'x 878, 883 (10th Cir. 2010).

The court finds there are genuine issues of disputed material facts as to whether a retaliatory motive was the but-for cause of Defendant Courtney's conduct. Defendant Courtney that Plaintiff's grievance was not filed close in time to the incident giving rise to the retaliation claim. Further, Defendant Courtney argues Plaintiff cannot show that she even knew about the prior grievance. However, temporal proximity is only one method of demonstrating a causal connection between a plaintiff's exercise of his constitutional rights and a defendant's adverse conduct. *See Maschner,* 899 F.2d at 949; *Gee,* 627 F.3d at 1189. Here, notwithstanding the fact that Defendant Courtney's alleged actions occurred approximately 20 months after Plaintiff filed a grievance that mentioned her, Plaintiff has submitted affidavits from himself and other inmates, averring that Defendant Courtney explicitly stated she was declining to assist Plaintiff because

11

he had filed grievances against her in the past.  (Sayed Aff. ¶ 3; Rivera Aff. ¶ 5; Resp. at 7-8, Affidavit of Darren Chandler ¶ 10 [Chandler Aff.].)[4]  This constitutes affirmative evidence of a retaliatory motive.

The court also rejects Defendant Courtney's argument that there is no evidence that she knew of Plaintiff's prior grievance.  Defendant Courtney admits in her affidavit that she responded to Plaintiff's January 28, 2010 grievance.  (Courtney Aff. ¶ 17.)

Defendant Courtney also argues that Plaintiff cannot establish that his prior grievance was the but-for cause of her actions because she acted consistent with a CDOC policy prohibiting offenders from leaving religious services early unless they have a legitimate reason.  More specifically, Defendant Courtney asserts that she determined pursuant to this policy that Plaintiff did not have a legitimate reason for leaving the prayer service because he gave Officer Baldwin two different reasons for why he needed to return to the cell house.  However, outside of her own testimony, Defendant Courtney has not submitted any evidence of this CDOC policy—indeed, she only refers vaguely to "our policies."  (Courtney Aff. ¶ 14.)  In any event, Defendant Courtney overlooks controlling Tenth Circuit law holding that a retaliation claim is actionable under § 1983 "even if the act, when taken for a different reason, would have been proper."  *Maschner,* 899 F.2d at 948 (the principle that prison officials may not retaliate against an inmate because of the exercise of his constitutional rights "applies even where the action

---

[4] Defendant Courtney argues in her Reply that because an Islamic Prayer Service log attendance sheet shows that Mr. Chandler was not present at the October 14, 2011 prayer service, his affidavit should not be considered.  (Reply at 3-4, Ex. B.)  However, this fact is in dispute as Mr. Chandler specifically states that he was at the prayer service.  (Chandler Aff. ¶ 3.)  Further, although it cannot be resolved at this juncture, this dispute is material as it relates to the strength of the evidence supporting a critical element of Plaintiff's retaliation claim.

taken in retaliation would be otherwise permissible."). Thus, even assuming Defendant Courtney can demonstrate that her actions were consistent with CDOC policy, Plaintiff's claim is still actionable if he is able to persuade the jury that Defendant Courtney nevertheless made that decision due to a retaliatory motive.

Ultimately, the court is presented with two conflicting accounts of why Defendant Courtney refused to escort Plaintiff to the cell house, notwithstanding his obvious pain. On the one hand, Defendant Courtney has testified that she declined to do so because Plaintiff gave Officer Baldwin[5] two different reasons as to why he needed to return to the cell house and, further, that she never told Plaintiff that she would not help him because he had filed grievances against her. (Courtney Aff. ¶¶ 14, 18.) On the other hand, Plaintiff and other inmates have testified that Defendant Courtney explicitly stated that she would not help Plaintiff because he had filed prior grievances against her. (Sayed Aff. ¶ 3; Rivera Aff. ¶ 5; Chandler Aff ¶ 10.) This is sufficient to establish a triable issue of material fact for the jury.

When a defendant moves for summary judgment, "the judge must ask himself not

---

[5] In his Response, Plaintiff argues that Officer Baldwin's statements that Plaintiff gave two different reasons for needing to leave the religious service early are impermissible hearsay. Defendant Courtney counters that the statements are not hearsay because they are not submitted for the truth of the matter asserted.

The court agrees with Defendant Courtney. It is widely recognized that "[s]tatements offered for the effect on the listener . . . are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1434 (10th Cir. 1993). Here, Officer Baldwin's statements are not submitted to prove that Plaintiff actually gave him two different reasons for needing to return to the cell house, but instead to show the effect those statements had on the subsequent actions of Defendant Courtney. That is, regardless of their truth, Officer Baldwin's statements nevertheless led Defendant Courtney to believe that Plaintiff had given two different reasons as to why he needed to leave the religious services. However, because the court finds summary judgment to be inappropriate even when Officer Baldwin's statements are considered, this dispute is not critical to the resolution of Defendant's Motion for Summary Judgment.

> whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence." Where defendants' motives are seriously at issue, trial by affidavit is particularly inappropriate.

*Maschner,* 899 F.2d at 949. If a jury finds Plaintiff and the other inmate's testimony credible, it could return a verdict in favor of Plaintiff.

As a final matter, Defendant Courtney argues that she is entitled to qualified immunity from Plaintiff's retaliation claim because there is no case law clearly establishing that her conduct was unlawful under the specific circumstances of this case. The "relevant, dispositive inquiry," however, "is whether it would be clear to a reasonable officer that [her] conduct was unlawful in the situation confronted." *Saucier,* 533 U.S. at 202. It was clearly established at the time of Defendant Courtney's actions that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of the inmate's exercise of his constitutional rights." *Maschner,* 899 F.2d at 947; *see also Fogle v. Pierson,* 435 F.3d 1252, 1264 (10th Cir. 2006) ("if in fact DOC officials retaliated against Fogle based on his filing administrative grievances, they may be liable for a violation of his constitutional rights."). In light of this clearly established law, the court finds that it would be clear to a reasonable officer in Defendant Courtney's position that it was unlawful to refuse to escort Plaintiff to the cell house to seek medical treatment for his extreme back pain because he had filed prior grievances against her. Accordingly, considering the facts submitted in a light most favorable to Plaintiff, the court cannot conclude that Defendant Courtney is entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, it is

ORDERED that Plaintiff's "Combined Motion for Permission to File Surreply and

Surreply" (Doc. No. 90) is GRANTED.  Plaintiff's Surreply is accepted as filed.  It is further

RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 79) be DENIED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 31st day of March, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge